**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| v. | ) ) | Criminal No. 3:08CR189 |
| **CHRISTOPHER DANCY, et al.** | ) ) ) | |
| **Defendants.** | ) ) | |

**MEMORANDUM OPINION**

This matter is back before the Court on the Defendant Christopher Dancy's (Dancy) motion to reconsider the Court's earlier granting of the government's motion to disqualify his counsel, Shannon Taylor, Esquire (Taylor) (docket no. 34). The Court has held an evidentiary hearing on the motion to reconsider at which time evidence was adduced that supplemented and clarified that which had been previously presented to the Court *in camera* by informal interview and proffer of government counsel[1] (not on the record) and at a relatively brief hearing which was on the record. In addition, the Court has allowed the parties to supplement their earlier submissions and the matter is therefore ready for resolution.

As a result of the testimony presented at the hearing on Dancy's motion to reconsider, the

---

[1] The Court had allowed the informal, off the record *in camera* presentation of evidence at the request of the government with the understanding that there was no objection by the Defendant or his counsel. However, substituted counsel then sought a renewed hearing in regard to the instant motion and the Court concluded that it would be prudent and necessary to have all evidence relative to the motion on the record for possible future reference and review.

Court finds as follows regarding the central factual issues:[2]

1. While former local detective Mark Dunn (Dunn) may have discussed aspects of the ongoing investigation of Dancy with Taylor when she served as prosecutor with the multi-jurisdictional grand jury that was involved in the investigation, such discussions were of a "vague" nature and did not provide sufficient specificity to inform Taylor that the investigation involved Dancy (see, e.g., Tr. of hearing, Aug. 19, 2008 at 19-20, 29-30, 41-44, 62-64, 66-67);[3]

2. Although Dunn caused subpoenas to be issued under Taylor's prosecutorial authority in regard to the Dancy investigation, the subpoena requests did not identify any individual target and did not otherwise put Taylor on notice that the requests referred to the investigation involving Dancy (see, e.g., Tr. at 13, 15, 51, 58, 63, 73); and

3. Although Dunn apparently described Taylor's opinion of the strength of the case against Dancy as being a "slam dunk from back when she was a prosecutor" (Tr. at 78), it is not sufficiently clear whether he meant that she held that opinion at the time when she was a prosecutor, knowing that the case involved Dancy (Tr. at 38); or that she expressed such an opinion after she left the prosecutor's office (Tr. at 44, 46); or that she made the comment in describing how Dunn, not her, felt about the strength of the case (Tr. at 68-69).

One's right to counsel of their own choosing in defending their liberty is fundamental to our system of justice. Accordingly, and as previously noted in the Court's earlier Opinion, it

---

[2] The evidence presented at the hearing was far more detailed than that presented to the Court in generalized form at the *in camera* presentation, and all testimony at the hearing was subjected to rigorous examination as opposed to the *in camera* session. An example of how the renewed hearing clarified matters is that the Court was under the mistaken impression that the some eighty eight subpoenas that were issued by the local multi-jurisdictional grand jury upon request of either Dunn or Taylor all related to the Dancy investigation, when but relatively few were related. (Mem. Op., July 23, 2008 at 16-17).

[3] While the Court has some difficulty in accepting "wholesale" Dunn's testimony that he purposely didn't identify by name confidential sources or targets, even when discussing cases with fellow investigators (Tr. at 16-18, 20, 38), especially where a fellow investigator remembered otherwise (Tr. at 82, 86), Dunn qualified his position by testifying that it was his "routine" practice (Tr. at 17), not necessarily employed on all occasions. Furthermore, the only relevance of whether he did or not is whether Taylor gained knowledge of the Dancy investigation while she was in an associated prosecutorial role and the record lacks sufficient specificity to support such a conclusion.

should only be revoked in special circumstances. (Mem. Op. at 5-6, <u>citing</u> case precedent). One of those "special circumstances" is, as agreed by both parties, when defense counsel formerly participated in an official, governmental capacity in a related matter "personally and substantially." (Mem. Op. at 12-14, citing relevant Ethics Rule). Although the Court remains concerned with what it perceives to be an appearance of impropriety in the present scenario, it also acknowledges that such is not the current standard by which to resolve the issue of whether Taylor has an impermissible conflict-of-interest in the continuing representation of Dancy.[4] While Taylor was obviously involved personally in her prior capacity as prosecutorial counsel to an investigating body in the same or related matter if, by no other means, than allowing subpoenas to be issued under her authority, the evidence now before the Court does not support the conclusion that she was also "substantially" involved by participating in or obtaining information that she knew, at the time, involved her present client, Dancy. The government would have the Court discount and dismiss the testimony of Dunn based on the supposition that "it simply cannot be believed," but the Court is unable to do so for the lack of affirmative evidence to the contrary other than the possibility that he did mention the names of confidential sources and targets in discussion with fellow investigators involved in the same investigation, contrary to his "routine" practice of not doing so (Tr. at 82, 86), and that he pursued his self-interest in revealing Dancy's name and location before the latter's arrest in order to claim an

---

[4]The Court cannot help but conjecture whether Dancy will conclude in the future, if he is convicted, that he was disadvantaged during any trial proceedings by what, at least the government perceives, to be conflicted representation. Presumably, he will be viewed by judicial authority to have waived any such objection past this point, but the situation is fraught with potential complications.

uncollected public service award and has testified falsely about the incident now. (Tr. at 81).[5] Simply put, the government's evidence in support of its motion to disqualify counsel is now, based on a more complete record, insufficient. The motion to reconsider and to vacate the earlier Order disqualifying Taylor must, therefore, be GRANTED.

     An appropriate Order shall issue.

/s/<br>Dennis W. Dohnal<br>United States Magistrate Judge

Date: September 15, 2008

---

[5]The dispute as to whether Dunn "called in" the identifying information about Dancy to the law enforcement hotline before or after Dancy's arrest is not, for this Court, sufficiently relevant to issues of credibility so as to justify rejection of all of his testimony. The Court also notes that it is most unlikely that Dunn, an experienced and well-respected former criminal investigator, would have intentionally fabricated his version of events while knowing it could be readily refuted by documented time records.